UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEBBRA LEE SANDERS,

                    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                    Defendant.

Case No. 3:11-cv-05088BHS-KLS

REPORT AND RECOMMENDATION

Noted for February 10, 2012

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On October 24, 2006, plaintiff filed an application for disability insurance benefits, and on February 14, 2008, she filed another one for SSI benefits, alleging disability as of October 15, 2006, due to a stroke. See Administrative Record ("AR") 16, 159, 164, 174. Both applications were denied upon initial administrative review and on reconsideration. See AR 16, 85, 90. A

REPORT AND RECOMMENDATION - 1

hearing was held before an administrative law judge ("ALJ") on June 9, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 34-82.

On June 24, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 16-29. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 3, 2010, making the ALJ's decision defendant's final decision. See AR 1; 20 C.F.R. § 404.981, § 416.1481. On January 31, 2011, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#3. The administrative record was filed with the Court on August 3, 2011. See ECF #15. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in finding plaintiff did not have a severe vision impairment; (2) in evaluating the medical evidence in the record concerning her mental impairments; (3) in discounting her credibility; (4) in evaluating the lay witness evidence in the record; (5) in assessing plaintiff's residual functional capacity; and (6) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

REPORT AND RECOMMENDATION - 2

support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of that process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step

REPORT AND RECOMMENDATION - 3

two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

In this case, the ALJ found plaintiff's depression/organic mental disorder and stroke-cerebrovascular accident with stent placement to be severe impairments. See AR 18. The ALJ further found in relevant part that "[w]hile the record document[ed] complaints of [a] vision impairment . . . no functional limitations ha[d] been established in conjunction" therewith, and that plaintiff had "slight changes in the right eye, but s[aw] well." AR 20-21. Plaintiff argues that based on her testimony that she experienced depth perception difficulties and other issues with her vision, the ALJ should have found a severe impairment here. But at step two of the sequential disability evaluation process, while the ALJ must take into account a claimant's pain and other symptoms (see 20 C.F.R. § 404.1529, § 416.929), the severity determination is made solely on the basis of objective medical evidence:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. *At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.* . . .

SSR 85-28, 1985 WL 56856 *4 (emphasis added). In addition, as explained in greater detail below, the ALJ did not err in discounting plaintiff's credibility regarding her alleged symptoms and limitations, and therefore he was not required to adopt any visual limitations she testified to at the hearing.

II. <u>The ALJ's Evaluation of the Medical Evidence in the Record</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

REPORT AND RECOMMENDATION - 4

Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

REPORT AND RECOMMENDATION - 5

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.  Dr. Dixon

Plaintiff underwent a psychological evaluation performed by David W. Dixon, Ph.D., in late February 2007, as a result of which he diagnosed her with a cognitive disorder, a dysthymic disorder and an anxiety disorder due to a cerebral vascular accident. See AR 312. Dr. Dixon also assessed plaintiff with a global assessment of functioning ("GAF") of 45 to 50,[1] further stating as follows:

> Ms. Sanders is somewhat reserved in socially interacting due to depression and some flat and sad affect. She demonstrates some difficulties with some areas of concentration and persistence. She demonstrates no difficulties satisfactorily explaining and justifying her position. Her ability to reason at times may be slightly affected by emotional lability but as aforementioned her

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV") at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning."); England, 490 F.3d at 1023, n.8 (GAF score of 50 reflects serious limitations in individual's general ability to perform basic tasks of daily life).

REPORT AND RECOMMENDATION - 6

> comprehension is excellent. She demonstrates no difficulties understanding.
> She appears generally to adapt fairly well to new environmental conditions.

AR 313. As pointed out by plaintiff, while the ALJ summarized Dr. Dixon's findings, he did not explain what weight he was giving thereto. See AR 19. Rather, the ALJ merely stated that as for "the opinion evidence," he was affording "great weight" to the opinion of Robert Hoskins, M.D., a non-examining, consultative physician, that plaintiff was "capable of performing light work" as that conclusion was "supported by the substantial evidence of record." AR 27; see also AR 334-41, 365.

Although defendant is correct that, as noted above, the ALJ may support his findings "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings," the ALJ here did not provide any interpretation of Dr. Dixon's findings. Id. As such, he erred. Nevertheless, the undersigned finds such error to be harmless, as it would not affect the outcome of this case. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

It is true, as noted above, that a GAF score in the 45 to 50 range is indicative of serious symptoms or a serious impairment in social or occupational functioning. But while a GAF score is "relevant evidence" of a claimant's ability to function mentally, and may be "of considerable help" to an ALJ in assessing a claimant's residual functional capacity ("RFC"), "it is not essential" to the accuracy thereof. England, 490 F.3d at 1023, n.8; Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002). Accordingly, an ALJ's "failure to reference the GAF score" in assessing a claimant's residual functional capacity "standing alone" does not make the RFC assessment inaccurate. Id.

Although the ALJ did not specifically address the GAF score assessed by Dr. Dixon, he

REPORT AND RECOMMENDATION - 7

strongly indicated elsewhere in his decision that he did not give it – or would not have given it – any weight. For example, the ALJ rejected the higher GAF score of 55[2] assessed by plaintiff's mental health counselor, noting its subjective nature and the fact that such assessments "are not entitled to great weight in making disability determinations." AR 26. Given that the ALJ also stated he found the evidence in the record overall showed plaintiff had "some limitations from psychiatric symptoms," but that the impact thereof did "not wholly compromise" her "ability to function independently, appropriately, and effectively on a sustained basis," it is highly unlikely he would have adopted Dr. Dixon's lower GAF score of 45-50.

As for Dr. Dixon's statement that plaintiff demonstrated "some difficulties with some areas of concentration and persistence" (AR 313), here too the ALJ's failure to expressly address it was harmless error. First, Dr. Dixon did not quantify the nature or extent of the difficulties he felt plaintiff had in these functional areas. That is, Dr. Dixon gave no indication such difficulties were directly translatable into specific work-related limitations. Further, the ALJ found plaintiff did have moderate limitations in those areas at step three of the sequential disability evaluation process, and later in assessing her residual functional capacity, he found she could concentrate, but only in regard to simple tasks. See AR 22-23. Accordingly, it appears the ALJ did take into account Dr. Dixon's conclusions concerning her ability to concentrate and persist, or at the very least adopted restrictions that fully encompassed his findings here.

B. Dr. Brown

In late May 2007, plaintiff underwent a psychological evaluation performed by Norma L. Brown, Ph.D., who diagnosed her with a mood disorder and an anxiety disorder, both of which

---

[2] "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting DSM-IV at 34).

REPORT AND RECOMMENDATION - 8

were due a recent stroke, and a cognitive disorder. See AR 343. Dr. Brown assessed a current GAF score of 55, further opining that plaintiff could reason, that she had moderate impairments in terms of understanding, memory, sustained concentration, and persistence, that she could not handle crowds or large groups, and that she easily fatigued and became overwhelmed. AR 344. Further, Dr. Brown found that the results from one questionnaire used in psychological testing she conducted at the time were "significant enough" to "cause definite problems" were plaintiff to attempt to "maintain full time competitive employment," and that although it was "not clear at this point whether her condition" was "permanent or temporary," plaintiff "should be considered disabled for the next twelve months." AR 343.

At the same time, Dr. Brown completed a psychological/psychiatric evaluation form, in which she found plaintiff to be moderately to severely limited in several mental functional areas based on the same diagnoses. See AR 347-48. In terms of Dr. Brown's findings and conclusions, the ALJ found in relevant part as follows:

> . . . Repeatable battery for the assessment of neuropsychological status results [conducted by Dr. Brown] did not indicate any major impairment in terms of Immediate or Delay[ed] Memory, Language, Attention, or Visual-spacial/Constructional Ability. The results of [a] Head Injury Questionaire indicated many of the soft signs of traumatic brain injury (Exhibit 11F/2).
>
> . . .
>
> . . . The "marked" limitations given by Dr. Brown (*see* Exhibit 11F/6-7), are given little weight because after a thorough review of the record, the undersigned concludes that they are unsupported by the claimant's IQ test results, which show an average mental ability, and her own extensive daily activities.

AR 19, 24-25. Plaintiff argues these were not valid reasons for rejecting Dr. Brown's opinions concerning her functional limitations. The undersigned disagrees.

As noted above, an ALJ need not accept the opinion of even a treating physician, "if that

REPORT AND RECOMMENDATION - 9

opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson, 359 F.3d at 1195; see also Thomas, 278 F.3d 957; Tonapetyan, 242 F.3d at 1149. As pointed out by the ALJ, although Dr. Brown based her conclusion that plaintiff would have definite problems maintaining employment and thus should be considered disabled based on some of the psychological testing results she obtained, other testing results failed to indicate any major impairment in several major functional areas, such as memory, language and attention. See AR 343. This is sufficient to call into question Dr. Brown's disability opinion, as well as the marked to severe mental functional limitations that she checked on the psychiatric/psychological assessment form she also completed.

In addition, while the ALJ did not specifically state he was rejecting Dr. Brown's opinion regarding plaintiff's inability to maintain employment, the fact that the ALJ rejected the marked to severe mental functional limitations Dr. Brown checked, strongly indicates the ALJ did not – or would not have – accepted her opinion regarding disability. As such, any error on the part of the ALJ in failing to expressly discuss this aspect of Dr. Brown's narrative report was harmless as well, as it is highly unlikely the ALJ's ultimate disability determination would change. Also, given that the ALJ did not err in discounting plaintiff's credibility in part due to the activities of daily living she engaged in – as discussed in greater detail below – it also was proper for the ALJ to reject Dr. Brown's findings and conclusions in part on this basis. See Morgan, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that other evidence of claimant's ability to function, including reported activities of daily living, contradicted that conclusion); Magallanes, 881 F.2d 747, 754 (9th Cir. 1989) (finding ALJ properly rejected physician's opinion in part on basis that it conflicted with plaintiff's own subjective pain complaints).

III. The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility for the following reasons:

> . . . [T]he claimant described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations (Exhibit 6F/4; Hearing Testimony). For example, the claimant testified she watches television, walks to the library every day; visits

REPORT AND RECOMMENDATION - 11

'facebook' and e-mails family members on the computer; reads voraciously (she stated she likes detective stories, non-fiction and autobiography and reads 2-3 books per week); uses public transportation to grocery shop; goes to church with a friend; and works as an information clerk volunteer at the train station four hours a day on Saturday. Furthermore, despite the allegations of symptoms and limitations preventing all work, the record reflects that the claimant traveled for two weeks to Georgia to visit a family member as late as May 2010. Although actual daily activities, traveling and a disability are necessarily mutually exclusive, the performance of these rather extensive physical and mental activities and the claimant's decision to travel a long distance from home for an extended period tends to suggest that the alleged symptoms and limitations may have been overstated and her mental and physical functional ability is much greater than alleged (Hearing Testimony).

The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. It is noted that even though she has received treatment for the allegedly disabling impairments after the initial hospitalization, that treatment has been essentially routine and/or conservative in nature. The claimant testified that she has not been hospitalized again. The emergency room records show her condition was not severe enough to merit hospitalization, and she was released in good condition (Exhibits 17F; 19F).

The claimant did undergo stent placement, which certainly suggests that the symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that this procedure was generally successful in relieving the severity of the condition as well as the functional impact on the claimant's physical and mental ability. The claimant has been prescribed and has taken appropriate medications for the alleged impairments, which have been relatively effective in controlling the claimant's symptoms. It is emphasized that the claimant testified that in 2008 her high blood pressure medications were discontinued as her condition was under control with diet and exercise. . . .

. . .

Despite the claimant's continued obesity, she does not have any neurological deficits, significant musculoskeletal abnormalities, or any serious dysfunction of the bodily organs that would preclude the range of work described [by the ALJ in his residual functional capacity assessment].

The record contains a statement from one of the claimant's doctors releasing the claimant to return to work (*see* Exhibit 5F/2-3).

The record evidence showed that the claimant has some limitations from psychiatric symptoms but the impact of these symptoms does not wholly compromise the ability to function independently, appropriately, and

REPORT AND RECOMMENDATION - 12

effectively on a sustained basis.  This is clearly evident by her daily activities, specifically her extensive reading habits and computer use that indicate significant mental function and ability.  Certainly, such symptoms would not preclude work, as opined by the vocational expert, involving simple mental ability as articulated in the established residual functional capacity.  It is further noted that there is no evidence of the use of any medications designed to treat any psychiatric or mental symptoms.

AR 25-26.  These are all valid reasons for finding plaintiff to be not fully credible concerning her alleged symptoms and limitations.[3]

Plaintiff argues the ALJ erroneously viewed the objective medical evidence in the record as part of her subjective complaints in finding her allegations lacked credibility.  It is not entirely clear what plaintiff means here, but the Ninth Circuit has held that an ALJ's determination that a claimant's complaints are inconsistent with such evidence can satisfy the clear and convincing requirement, although a claimant's credibility may not be discounted "*solely* because the degree of pain alleged is not supported by" that evidence. Regennitter, 166 F.3d 1294, 1297 (9th Cir. 1998); Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991) (en banc)) (emphasis added); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989).  As explained above, the ALJ in this case provided other valid reasons for discounting plaintiff's credibility as well.

Plaintiff also takes issue with the ALJ's reliance on her daily activities in finding her to

---

[3] See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting of claimant's credibility in part due to lack of consistent treatment, and noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure of physician to prescribe serious medical treatment for supposedly excruciating pain); Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are "inconsistent with clinical observations" can satisfy clear and convincing requirement); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation); Morgan, 169 F.3d 595, 599 (ALJ may discount a claimant's credibility on basis of medical improvement); Smolen, 80 F.3d at 1284 (to determine whether claimant's symptom testimony is credible, ALJ may consider his or her daily activities).

REPORT AND RECOMMENDATION - 13

be not fully credible. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, they can "meet the threshold for transferable work skills." Id. Second, they can "contradict his [or her] other testimony." Id.

Under the first ground, a claimant's testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7. However, the claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722.

While the record does not clearly show all of the activities of daily living the ALJ listed have been performed to an extent or for a duration indicating she is able to spend a substantial part of the day performing them and that they are transferable to a work setting (see AR 57-67, 195-200, 210, 212), others contradict her claims of complete disability. Specifically, as noted by the ALJ, plaintiff testified she volunteered each Saturday at the train station for four hours at a time and enjoys it, that she goes to the library five days a week – albeit assuming she's having "good" days – and reads up to two to three books per week, and that she took a two-week trip to visit family out of state in 2010, during which she helped her sister-in-law with her kids. See AR 63, 65-66. Accordingly, the ALJ did not err in finding plaintiff to be not fully credible for this reason. Even if the ALJ did err in discounting her credibility on this basis, again as discussed above, the ALJ provided other, valid reasons for his adverse credibility determination, including evidence of medical improvement and a lack of more serious treatment, neither of which plaintiff

REPORT AND RECOMMENDATION - 14

challenges. See Tonapetyan, 242 F.3d at 1148 (fact that one reason for discounting claimant's credibility is improper does not render ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence).

IV. The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains a mental impairment questionnaire completed in early June 2010, by Jeremy Greenwood, M.S.W., C.M.H.S., in which he diagnosed plaintiff with a moderate major depressive disorder, single episode, and assessed her with a GAF score of 55, both current and the highest in the past year. See AR 399. Mr. Greenwood stated plaintiff "experiences depressed mood, anhedonia, appetite changes, feelings of worthlessness, low energy, poor memory, [and] poor concentration," which "results in periods where she has difficulty leaving her home." AR 400. While plaintiff experienced improvement with the treatment she received, Mr. Greenwood stated her major depressive disorder remained. See AR 401. On the other hand, although he felt plaintiff's impairments had lasted or could be expected to last for a period of at least 12 months, Mr. Greenwood was "[u]nable to determine" her prognosis, "[u]nable to assess" where she had a low I.Q. or reduced intellectual functioning and "[n]ot qualified to assess [her] ability to engage

REPORT AND RECOMMENDATION - 15

in work related activities." AR 401-02.

In regard to the questionnaire Mr. Greenwood completed, the ALJ stated:

> . . . [W]hile I considered the Mental Impairment Questionaire filled out by [Mr.] Greenwood, . . . it is given little weight because . . . only acceptable medical sources can give medical opinions. In fact, Mr. Greenwood noted in the report he was not qualified to assess the claimant's ability to engage in work-related activities (*see* Exhibit 21F/4).

AR 25. Plaintiff argues the ALJ did not provide any germane reasons for rejecting the opinion of Mr. Greenwood, but the very fact that Mr. Greenwood himself acknowledged he was unqualified to assess her ability to engage in work-related activities is highly germane to the relevance of that opinion. That is, given that Mr. Greenwood did not feel qualified to opine as to plaintiff's work-related capabilities – and that her ability to perform work-related activities is what is of primary relevance in this case – that opinion sheds little, if any light, on her allegations of disability, and thus the ALJ properly disregarded it.

V.   The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ

REPORT AND RECOMMENDATION - 16

must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity:

> **. . . to lift/carry 10 pounds frequently and 20 occasionally with sit/stand option at will, walk 4/8 for a full eight hour day. She has unlimited ability to push/pull and perform gross and fine movements with occasional grasping, gripping, feeling, and fingering with left hand. The claimant can occasionally climb stairs, but not ladders, ropes, or scaffolds. She cannot run. She can bend, stoop, crouch, crawl, balance, twist, and squat. The claimant should have limited exposure to heights, dangerous machinery, or uneven surfaces. The claimant gets along with others, understands simple instructions, concentrates and performs simple tasks, responds and adapts to workplace changes and supervision but in a limited public/employee contact setting.**

AR 23 (emphasis in original). Plaintiff argues the ALJ erred in assessing the above RFC in light of his errors in evaluating the opinion evidence from Dr. Dixon and Dr. Brown. But because, as discussed above, any errors the ALJ may have made in evaluating that evidence is harmless, the ALJ did not err in assessing plaintiff's residual functional capacity on this basis.

VI.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

REPORT AND RECOMMENDATION - 17

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 75-76. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 75-77. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 28.

Plaintiff argues the ALJ erred in failing to include in his hypothetical question any vision limitations, but as discussed above because the ALJ did not err in finding the record was devoid of any medical evidence of such limitations, he was not obligated to include them in the question he posed. Plaintiff also argues the ALJ should have included a limitation regarding "fluctuating work performance in performing specific tasks," it seems based on the "difficulties in some areas of . . . persistence" Dr. Dixon stated she had. ECF #17, p. 10; AR 313. Again, though, since as discussed above any errors the ALJ made in assessing Dr. Dixon's opinion were harmless, here

REPORT AND RECOMMENDATION - 18

too he did not have to adopt such a limitation, given that, also as discussed above, Dr. Dixon did not indicate in any useful detail regarding the nature or extent of those difficulties.

Plaintiff goes on to argue that the jobs the vocational expert testified that she was able to do – storage rental clerk (Dictionary of Occupational Titles ("DOT") 295.367-026), office helper (DOT 239.567-010) and small parts assembler (DOT 706.684-022) – require frequent handling and fingering, whereas the ALJ limited her to only occasional fingering and handling. The ALJ, though, did not limit plaintiff's ability to handle. See AR 23. As for fingering, defendant agrees the ALJ erred in finding plaintiff could perform the two jobs of small parts assembler and office helper, as they both require frequent fingering. See DOT 239.567-010; DOT 706.684-022. But as defendant goes on to point out, the job of storage rental clerk does not require any fingering. See DOT 295.367-026. Accordingly, plaintiff has failed to establish she is precluded from being able to perform that job on this basis.

Lastly, plaintiff argues the sit/stand at will option adopted by the ALJ precludes her from being able to perform the remaining job of storage rental clerk. Plaintiff bases her argument on the following Social Security Ruling language:

> 1. *Alternate Sitting and Standing*
> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferrng work skills to such jobs, he or she would not be found

REPORT AND RECOMMENDATION - 19

> disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. . . .

SSR 83-12, 1983 WL 31253 *4. That Ruling goes on to provide, however, that "[i]n cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base." Id. Whether or not such unusual limitation of ability is present in this case, the ALJ consulted a vocational expert, who testified that plaintiff would be able to perform the above jobs even with a sit/stand requirement. See AR 75-77. The ALJ's step five determination thus did not run afoul of the above language.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ properly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 10, 2011**, as noted in the caption.

DATED this 26th day of January, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20